UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

**Case Number: 24-cv-61135-MARTINEZ**

ZACHARY MELANCON, DANIEL
JAMES RUCHMAN, and CASSEY
WATSON, individually and on behalf of all
those similarly situated,

      Plaintiffs,

v.

ALPHA PRIME SUPPS LLC, a Florida
limited liability company,

      Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

**THIS CAUSE** comes before this Court upon Defendant Alpha Prime Supps LLC's Motion

to Dismiss Plaintiffs' Complaint ("Motion"), (ECF No. 9). This Court had reviewed the Motion;

Plaintiffs' Response, (ECF No. 13); Defendant's Reply, (ECF No. 14); and pertinent portions of

the record, and applicable law, and is otherwise fully advised in the premises. After careful

consideration and for the reasons set forth herein, the Motion is **GRANTED**.

## I.    BRIEF FACTUAL BACKGROUND

Defendant formulates, manufactures, distributes, and sells a line of protein-infused

brownies (the "Products"). (Compl. ¶ 13, ECF No. 1.) Plaintiffs Zachary Melancon, Daniel James

Ruchman, and Cassey Watson have purchased all relevant flavors[1] of the Products. (*Id.* ¶ 15.)

---

[1]    Banana nut, chocolate glazed doughnut, glazed cinnamon roll, chocolate cookie monster, peanut butter candy crunch, cookie dough, birthday cake blondie, blueberry cobbler, and cookies 'n cream blondie. (Compl. ¶ 13.)

Plaintiffs claim that all flavors of the Products at issue in this case are marketed by Defendant as containing 19 grams of protein per serving. (*Id.* ¶ 13.) Plaintiffs included the following picture of a promotional photo of the Products:



(*Id.*) This claim is repeated in the "Nutrition Facts" panel on the Products' back label, and on Defendant's website at https://alphaprimesupps.com/pages/prime-bites. (*Id.* ¶ 14.)

Plaintiffs allege that Defendant's claims regarding the Products' protein content are false. (*Id.* ¶ 16.) Plaintiffs' counsel allegedly engaged an independent, third-party laboratory to test the Products, "revealing that the protein content in the Products is overstated, with the shortfalls ranging from approximately 10% at the high end (or 17 grams of protein in a bar claiming to

contain 19 grams) to 23% at the low end (or 14.7 grams of protein in a bar claiming to contain 19 grams of protein) . . . ." (*Id.*) Because the Products are "Class I" foods as defined in 21 C.F.R. § 101.9(g)(3), Plaintiffs claim that no shortfall in protein content is permitted under federal labelling regulations. (*Id.* ¶ 17.) Due to Defendant's "deceptive and false labelling statements," Plaintiffs allege that Defendant was able to charge consumers including Plaintiffs a premium for the Products relative to key competitors' products, or relative to the average price charged in the marketplace for competing products. (*Id.* ¶ 21.)

On June 28, 2024, Plaintiffs initiated this action against Defendant. (ECF No. 1.) The Complaint asserts three counts against Defendant: Violation of the Florida Unfair and Deceptive Trade Practices Act Chapter 501, Part II, Florida Statutes (Count I); Unjust Enrichment under Florida Law (Count II); and Breach of Express Warranty under Florida Law (Count III). (*Id.* at 14–17.) The Complaint also seeks injunctive relief. (*Id.* at 18.)

Defendant now moves to dismiss the entirety of the Complaint for the following reasons: (1) Plaintiffs lack Article III standing, (2) the FDA preempts all of Plaintiffs' state law claims, (3) Plaintiffs failed to plead that their alleged testing was performed in accordance with FDA requirements, and (4) the Complaint is a shotgun pleading. (*See generally* Mot.)

## II.   LEGAL STANDARD

One element of the case-or-controversy requirement under Article III of the United States Constitution is that plaintiffs "must establish that they have standing to sue" in federal court. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Thus, standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 4983 (1975). To establish standing, a plaintiff must allege that: (1) it "suffered an injury in fact that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2)

3

"the injury is fairly traceable to conduct of the defendant;" and (3) "it is likely, not just merely speculative, that the injury will be redressed by a favorable decision." *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003).

"The party invoking federal jurisdiction bears the burden of proving standing." *Fla. Pub. Int. Research Grp. Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1083 (11th Cir. 2004). "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir.1991). "If at any point in the litigation the plaintiff ceases to meet all three requirements for constitutional standing, the case no longer presents a live case or controversy, and the federal court must dismiss the case for lack of subject matter jurisdiction." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011) (citing *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1277 (11th Cir. 2006)).

Under Federal Rule of Civil Procedure 12(b)(6), the Court will grant a motion to dismiss if the complaint fails to state a claim for which relief can be granted. To survive dismissal, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At this stage of the case, "the question is whether the complaint 'contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Worthy v. Phenix City*, 930 F.3d 1206, 1217 (11th Cir. 2019) (alteration adopted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In ruling on a motion to dismiss, the Court "accepts the factual allegations in the complaint as true and construes them in the light most favorable to plaintiff." *Speaker v. U.S. HHS CDC & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). A complaint must contain enough facts to plausibly allege the required elements. *Watts*

4

*v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295–96 (11th Cir. 2007). A pleading that offers "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

**III.   DISCUSSION**

As noted above, Defendant moves to dismiss the Complaint arguing that Plaintiffs lack standing. Because the issue of standing "is a threshold jurisdictional question[,]" the Court first addresses the parties' arguments as to Article III standing. *See Walters v. Fast AC, LLC*, 60 F.4th 642, 647 (11th Cir. 2023).

**A.     Article III Standing – Lack of Injury**

Defendant argues that Plaintiffs have failed to plausibly plead a concrete injury and therefore lack Article III standing. (Mot. at 3.) In response, Plaintiffs note that they alleged that they paid a price premium and that they would not have bought the Products had they known they were short of protein. (Resp. at 3; Compl. ¶¶ 21–22.) Plaintiffs argue that such allegations are sufficient to confer Article III standing. (Resp. at 3–4.)

Although Defendant acknowledges that an economic injury usually is considered the epitome of a "concrete" injury, Defendant argues that Plaintiff only offers ambiguous or conclusory claims of a price premium to establish injury. (Mot. at 3–4); *see MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019). Defendant then cites to other district court cases from this circuit where courts found that Plaintiffs lacked standing for similar reasons. (*Id.* at 4); *see Ramirez v. Kraft Heinz Foods Co.*, No. 22-CV-23782, 2023 WL 4788012, at 3-5 (S.D. Fla. July 27, 2023); *Valiente v. Publix Super Mkts., Inc.*, No. 22-22930-CIV, 2023 WL 3620538, at 3-5 (S.D.

Fla. May 24, 2023); *see also, Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1336–37 (S.D. Fla. 2007) (finding that to show damages under the price premium theory, a plaintiff needed to demonstrate the hypothetical price at which the product would sell if not for the purportedly misleading advertisements, and a determination of such hypothetical price was too speculative to be an "actual injury" under Article III).

In *Ramirez*, the plaintiff brought a class action against a manufacturer of microwaveable single-serve cups of mac and cheese, alleging that the product took longer to prepare than represented on the packaging. *Ramirez*, 684 F. Supp. 3d at 1255. In holding that the plaintiff lacked Article III standing, the *Ramirez* court reasoned the following:

> Plaintiff alleged that "[a]s a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $10.99 for eight 2.39 oz cups, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions." ECF No. [1] ¶ 15. She does not allege that she was unable to consume the product or that it was otherwise so flawed as to be rendered useless. In fact, the Complaint does not even include an allegation that Plaintiff ever attempted to cook the product. Similarly, Plaintiff's Complaint contains no factual allegations of the price she might have paid if Defendant's product was not marketed as ready in three and a half minutes. *See* ECF No. [1]. Therefore, Plaintiff has failed to demonstrate an injury and lacks standing for her FDUTPA and tag-along claims.

*Id.* at 1259–60.

Similarly, in *Valiente*, the court found that the plaintiff's allegations that Publix's honey-lemon cough drops caused him economic loss resulting from the product's misleading advertisements did not suffice to allege an injury-in-fact. *Valiente*, 2023 WL 3620538 at *3. The court noted that the plaintiff did not allege that the "cough drops were defective, did not work as advertised, or otherwise were so flawed as to render them worthless." *Id.* at *5. The court further noted that the plaintiff "does not allege any facts by which one might measure the difference between the 'premium price' he claims to have paid and the cough drops' fair market price. That

6

is, he fails to tie any aspect of the product's label to the supposedly 'premium price' of '$1.79'." *Id*. Because of these reasons, the *Valiente* court found that the plaintiff failed to allege an economy injury and therefore lacked standing. *Id*.

In their Response, Plaintiffs rely on *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1204 (S.D. Fla. 2021), in which the court held that the plaintiff's overpayment constituted an economic injury that was sufficient to confer standing. (Resp. at 3.) However, in *Lewis*, the Plaintiff "bargained for safe vehicles free of defective headrests, but instead received unsafe vehicles with defective headrests." *Id*. The instant case is analogous to *Ramirez* and *Valiente*, in that "Plaintiffs fail to indicate that the Products are defective, do not work as advertised, or otherwise are so flawed as to render them worthless." (Mot. at 5.) Although Plaintiffs allege that they suffered an injury under a price premium theory, they do not offer any supporting facts. In conclusory fashion, Plaintiffs allege that "[b]ecause of its deceptive and false labelling statements, Defendant was enabled to charge consumers including Plaintiff a premium for the Products relative to key competitors' products, or relative to the average price charged in the marketplace for competing products." (Compl. ¶ 21.) However, as Defendant notes, "Plaintiffs fail to identify any competing products, the composition of these unspecified 'competing products,' their prices, or the amount of protein in those products that could allow the Court to plausibly conclude that Plaintiffs suffered a concrete economic injury in fact." (Mot. at 5.) As such, this Court finds that Plaintiffs have failed to demonstrate a concrete injury and therefore lack standing.

### B.      Article III Standing – Injunctive Relief

Plaintiffs also lack Article III standing to seek injunctive relief. To have standing to bring suit for injunctive relief, a plaintiff must show (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the

injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision. *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003).

"In addition to past injury, a plaintiff seeking injunctive relief 'must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.'" *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328–29 (11th Cir. 2013) (quoting *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001)). "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows 'a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury.'" *Id.* at 1329 (quoting *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001); *Wooden*, 247 F.3d at 1284); *see also Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1357 (11th Cir. 2021) ("[I]f a plaintiff seeks prospective relief . . . he must 'allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'" (quoting *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999)).

Here, because Plaintiffs have failed to plausibly allege a concrete injury, their claim for injunctive relief must fail as well. *Valiente*, 2023 WL 3620538 at *6. Also, there is no real and immediate threat of future injury. Plaintiffs state they will not purchase the Products at issue or other products offered by Defendant. (Compl. ¶ 39); *See Barron v. Snyder's-Lance, Inc.*, No. 13-62496-CIV, 2015 WL 11182066, at *10 (S.D. Fla. Mar. 20, 2015) (finding that the plaintiffs "have not established a real and immediate . . . threat of future injury, because they have not alleged that they intend to purchase the allegedly mislabeled product again.").

### C. Leave to File Amended Complaint

In their Response, Plaintiffs request leave to amend if Defendant's Motion is granted. (Resp. at 16–17.) Like the plaintiff in *Valiente*, Plaintiffs' request to amend appears to be "an afterthought, at the end of [their] response in opposition to [Defendant's] motion to dismiss, making the request both procedurally defective and lacking in substantive support under Eleventh Circuit Precedent." *Valiente*, 2023 WL 3620538, at *7; *see Newton v. Florida*, 895 F.3d 1270, 1277-78 (11th Cir. 2018) (reaffirming the rule that a request for leave to amend is not properly raised if embedded in a memorandum in opposition to a motion to dismiss). Because Plaintiffs' request for leave to amend is not procedurally proper, it is denied.

## IV. CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** that:

1. Defendant's Motion to Dismiss, (ECF No. 9), is **GRANTED**.

2. The Complaint, (ECF No. 1), is **DISMISSED without prejudice** and without leave to amend.

3. The Clerk is **DIRECTED** to **CLOSE** this case and **DENY** any pending motions as **MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this *13* day of January 2025.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies Furnished to:
All Counsel of Record